[Crim. No. 3707.   Third Dist.   Nov. 9, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES R. ALLAN JANSSEN, SR., Defendant and Appellant.

Samuel J. Scicchitano, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris Maier, Assistant Attorney General, Raymond M. Momboisse and Roger Venturi, Deputy Attorneys General, for Plaintiff and Respondent.

FRIEDMAN, J.—A jury trial resulted in verdicts finding defendant guilty of second degree burglary of the cabin of Dwight Wood and (under instructions relative to one who has armed himself with a deadly weapon in the course of a burglary) first degree burglary of Old Man River Lodge. Defendant appeals from the judgment.

Primary contention on appeal is that a confession made to a deputy sheriff after defendant had been in jail for five days was inadmissible since defendant had not been informed that he had a right to counsel or that he had a right to remain silent. The confession was the product of an interrogation made two days before defendant's scheduled preliminary examination. At his own election defendant proceeded without counsel, entered a plea of innocent and represented himself throughout the trial.

Defendant was caught burglarizing a closed summer resort called Old Man River Lodge. One of the buildings was the lodge itself and there were other cottages or cabins in the immediate area. The lodge and the cabins were closed on June 13, 1964, the date of the burglaries, and the shades of the lodge had been drawn. Lou Hayes, caretaker of the establishment, lived a mile away.

Jim Hayes, 19-year-old son of Lou Hayes, testified that on the date in question, two or three hours before dark, he was

driving a tractor past Old Man River Lodge and noticed that one of the window shades was up. He saw a shadow dart across the window. He hurried home to summon his father, who took a shotgun. Jim Hayes drove his father back to the lodge, then drove away to get the police.

Lou Hayes testified that he walked toward the lodge building. There was a small cabin at one side of the lodge, and he saw defendant Janssen looking around the refrigerator that was on the porch. (He identified Janssen in court.) Hayes ran around Janssen to cut him off and held him at point of the shotgun. Two peace officers came to the scene. Janssen was lying on the ground face down with Hayes standing over him with a shotgun. The officers searched Janssen. In the left back pocket of his trousers was an 8-inch butcher knife, and another knife was up his right sleeve. Both these knives were part of the cookhouse equipment in the Old Man River Lodge. Also on Janssen's person were two syringes plus a green box and contents, all of which had come from Old Man River Lodge. Janssen was wearing a pair of shoes and a military jacket. Hayes recognized these articles as the property of Dwight Wood, who owned a cabin some miles away. Hayes was also caretaker of the Dwight Wood cabin. Two days earlier Hayes had seen Dwight Wood at his cabin wearing these shoes. He had seen the jacket in the closet of the cabin.

Lou Hayes testified that the back window of the lodge had been broken out and a window in the front had been pushed back or forced back. Hayes entered the lodge and determined that the knives were missing, as was some vodka from a liquor cabinet. Later that day Hayes went to the Dwight Wood cabin and confirmed that the jacket and shoes worn by Janssen were missing from the cabin.

One of the peace officers who arrived at the scene of the capture was Deputy Sheriff Charles Cason. On June 18, after Janssen had been in jail five days, Cason interrogated him. He confessed that he had entered the cabin of Dwight Wood and the lodge building and had removed the various items found in his possession. He signed a written statement so declaring. Before permitting the confession to be read to the jury, the court explained to defendant the procedure to follow if he wished to exclude the confession on a claim of involuntariness. There was also a discussion of defendant's lack of counsel and his consistent refusal of counsel. Defendant conducted a brief *voir dire* examination of the witness, then stated: "I have no more questions, your Honor, not at this time and I will permit the statement as evidence." The court:

"You will permit the statement as evidence?" Defendant: "Yes."

Defendant did not take the stand to testify in his own defense. He called five witnesses, each of whom he briefly and pointlessly examined. None of these witnesses contributed any relevant testimony, and none impeached any prosecution witness or reflected adversely on the prosecution evidence.

■ Defendant's confession was elicited under circumstances which bring it within the exclusionary rule of *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], that is, he was an accused person in custody, subjected to an incrimination-directed interrogation and not informed of his right to legal counsel and silence. ■ Defendant's trial occurred before the *Dorado* decision, hence his apparent waiver of trial court objection to the confession's admission does not preclude him from asserting the objection on appeal. (*People* v. *Hillery,* 62 Cal.2d 692, 711-712 [44 Cal.Rptr. 30, 401 P.2d 382].) ■ In view of the *Dorado* rule the confession's admission in evidence was error.

The central question is whether the error compels reversal. Article VI, section 4½, of the California Constitution declares that a judgment shall not be set aside, "in any case," on the ground of improper admission of evidence unless after an examination of the entire cause, including the evidence, the reviewing court finds that the error resulted in a miscarriage of justice. With rare exceptions, however, erroneous admissions of a confession elicited in violation of the *Dorado* standards requires reversal without regard to independent evidence of guilt. (*People* v. *Dorado, supra,* 62 Cal.2d at p. 356; *People* v. *Schader,* 62 Cal.2d 716, 728 [44 Cal.Rptr. 193, 401 P.2d 665].) The rare exceptions stem from several recent decisions of the State Supreme Court. Described in one way, our problem is whether this case presents one of the rare exceptions.

A dictum in *People* v. *Parham,* 60 Cal.2d 378, at page 385 [33 Cal.Rptr. 497, 384 P.2d 1001], points out, in effect, that except in rare cases it is extremely difficult to determine what part a confession played in the jury's verdict, since it is such persuasive evidence of guilt. This dictum was utilized in *People* v. *Jacobson,* 63 Cal.2d 319 [46 Cal.Rptr. 515, 405 P.2d 555], decided September 17, 1965, which affirmed a conviction notwithstanding error in admission of *Dorado*-type statements. In *Jacobson* the court demonstrated that there are indeed " 'rare case[s]' in which a refusal to inquire into the impact, if any, of the confession on the verdict would

result in complete abandonment of article VI, section 4½, of the California Constitution.'' (63 Cal.2d at p. 331.) In *People* v. *Cotter,* 63 Cal.2d 386 [46 Cal.Rptr. 622, 405 P.2d 862], decided October 1, 1965, the court pursued the approach announced in *Jacobson* and affirmed a murder conviction notwithstanding improper admission of a *Dorado*-type confession.

We are now put to the necessity of measuring the breadth of the area opened by *Jacobson* and *Cotter.* The dictum in *Parham* should logically supply a gauge for this purpose since it was a major factor in the *Jacobson* decision. The *Parham* opinion recognizes that in most cases a confession so pervades the jury's consciousness that it is impossible for reviewing judges to segregate the permissible from the prohibited evidentiary influences. The rare case, then, would be one in which, for one reason or another, appellate judges can say that the defendant's confession did not pervade the jury's consciousness, that it could be segregated from the remaining evidence without denting the moral certainty of guilt.

So interpreted, the *Jacobson-Cotter* rule would permit affirmance of those comparatively infrequent convictions where guilt is obvious aside from a *Dorado*-type confession. This interpretation receives additional support from an observation in the majority opinion in *Jacobson.* The opinion notes that while reversals of this sort serve to confine police investigations within constitutional limits, California judicial policy has been more concerned with the fairness of the trial. (63 Cal.2d at p. 330.) The observation supports the notion that the *Jacobson-Cotter* rule extends to a situation where fairness of the defendant's trial and conviction is demonstrable and the investigation, having taken place before the *Dorado* decisions was not a calculated invasion of constitutional protections.

True, both *Jacobson* and *Cotter* were decided in the context of a trial which involved a sequence of confessions. There is no unique characteristic of a multiple confession situation which provides an exclusive switch to turn article VI, section 4½, of the California Constitution into operation. To say otherwise puts reviewing courts in the inconsistent position of ordering a new trial for an appellant who is first caught *in flagrante delicto,* then makes an illicit confession; while denying a new trial to one who first makes an admissible statement of guilt, then an inadmissible one. The illicit statement is no more incriminating in one case than the other.

So interpreted, the *Jacobson* and *Cotter* decisions would sanction affirmance here, since this is one of those relatively

infrequent cases in which the confession can be put aside without destroying the practical inevitability of conviction. Defendant was caught red-handed in one burglary wearing the products of another. Unshaken evidence of unimpeached witnesses thoroughly and resoundingly demonstrated his guilt. The confession was pure surplusage, a wisp of straw tossed on a mountain of incrimination. No sane jury would have acquitted him. The confession to one side, there was not the slightest possibility—let alone a reasonable one—of an acquittal.

Any estimate of the scope of *Jacobson* and *Cotter* must include consideration of another recent decision, *People* v. *Price*, 63 Cal.2d 370 [46 Cal.Rptr. 775, 406 P.2d 55], filed October 1, 1965. In the *Price* case admission of two *Dorado*-type statements impelled reversal. The majority opinion states: ''It is manifest in the instant case that defendant's first two statements, which were directly solicited by the district attorney, fall squarely within that class of statement which comes within the proscription of *Dorado,* which was predicated upon the prior decisions of the United States Supreme Court in *Massiah* v. *United States,* 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246], and *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]. The admission of those statements resulted in a denial of due process that compels reversal in the instant circumstances. '[T]he view that even if the testimony as to the petitioner's confession was erroneously admitted, the error was a harmless one . . . is an impermissible doctrine. As was said in *Payne* v. *Arkansas* [356 U.S. 560 (78 S.Ct. 844, 2 L.Ed.2d 975)] 'this Court has uniformly held that even though there may have been sufficient evidence, apart from the coerced confession, to support a judgment of conviction, the admission in evidence, over objection, of the coerced confession vitiates the judgment because it violates the Due Process Clause of the Fourteenth Amendment.'' [Citations.]' (*Lynum* v. *Illinois,* 372 U.S. 528, 537 [83 S.Ct. 917, 9 L.Ed.2d 922].) While in the *Lynum* case the Supreme Court had before it a coerced confession, we are persuaded that the same rule applies with respect to the admission of confessions obtained in violation of *Massiah* and *Escobedo,* at least when the admissible evidence does not include an equally damaging confession.''

We have considered the final phrase of the quoted statement, which indicates that automatic reversal is the rule ''at least when the admissible evidence does not include an equally

damaging confession.'' The phrase has obvious application to the *Jacobson* and *Cotter* cases and to the multiple confession situation. It demonstrates that a majority of the California Supreme Court have thus far chosen to confine *Jacobson* and *Cotter* to that narrow situation; that otherwise automatic reversal is the rule when error of the *Dorado* type appears. It demonstrates that our suggested appraisal of *Jacobson* and *Cotter* is by far too broad and would embody a rule of decision which is not available as a matter of law. *People* v. *Price* and *stare decisis* compel us, albeit reluctantly, to remand this case for retrial.

Judgment reversed.

Pierce, P. J., and Regan, J., concurred.

A petition for a rehearing was denied December 2, 1965, and respondent's petition for a hearing by the Supreme Court was denied January 6, 1966.