244 Cal.App.2d 423 (1966)
THE PEOPLE, Plaintiff and Respondent,
v.
VERNON HILDABRANDT, Defendant and Appellant.
Crim. No. 2372. 
California Court of Appeals. Fourth Dist., Div. Two. 
Aug. 22, 1966.
 Robert E. Mitchell for Defendant and Appellant.
 Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David S. Sperber, Deputy Attorney General, for Plaintiff and Respondent.
 KERRIGAN, J.
 By an information filed on January 8, 1965, the appellant and a codefendant, Lee McMickle, alias Craig Cannon, were charged in two counts of violations of Penal Code, section 211 (robbery), and Penal Code, section 484a, subdivision (b)(6) (unlawful use of a credit card). Both defendants were found guilty of each crime. Application for probation was denied, and defendants were sentenced to state prison. Only the defendant Hildabrandt appeals from the judgment of conviction.
 In essence, the appellant contends that certain extrajudicial statements amounting to a confession which were extracted during a post-arraignment interrogation were improperly admitted in evidence during trial because he was not effectively informed of his right to counsel and his right to remain silent prior to making such statements, and because his waiver of these rights was not the result of a free, knowing, and intelligent exercise of his discretion.
 A review of the factual background reflects that shortly after midnight on November 8, 1964, a woman employee of the Anaheim Police Department was physically attacked when she returned to her trailer home from work and grocery shopping, and her purse, which contained the sum of approximately 35 to 40 dollars and several credit cards, was stolen. The victim could not identify the assailant inasmuch as she was apparently rendered unconscious during the commission of the assault preceding the theft.
 Her credit cards were reported as stolen to the companies honoring each of them. It was thereafter determined that one of her credit cards was being utilized in the Orange County region. Three service station attendants subsequently identified the appellant at trial as the user of one stolen credit card.
 On December 11, 1964, the appellant and his codefendant were arrested in Washington, waived extradition and were transported to California. On December 14, 1964, appellant was arraigned in Newport Beach and, at that time, in response to a query by the court, indicated his father was making arrangements for the retention of private defense counsel. *426
 The defendant and his companion had missed several meals in the jails in which they had been incarcerated due to scheduling difficulties during the period in which they had been transported from the State of Washington. For this same reason they were not fed prior to their arraignment in California. Each also apparently suffered from lack of sleep due to the exigencies of their travel and a degree of apprehension concerning their future.
 At approximately 1:30 on the afternoon following their arraignment on December 14, McMickle was taken to a small padded room in the North Orange County sheriff's station and interrogated by one William Varner, chief investigator for the Orange County district attorney's office. At the conclusion of McMickle's interrogation, appellant Hildabrandt was taken to this interrogation room at approximately 3:15 p.m., without seeing McMickle.
 The precise details of what transpired during this and the codefendant's interrogation are unsettled. However, Officer Varner's testimony pertaining to appellant's interrogation gives rise to several inferences, is uncorroborated, and substantiates many of appellant's assertions. A review of the entire record discloses appellant's account of the interrogation is uncontradicted in large part.
 The appellant was conducted into the room just vacated by his companion, McMickle, with whom he had not yet had an opportunity to confer. According to Officer Varner in his testimony at trial:
 Officer Varner: "Well, I advised him all in one sentence that he had a right to have an attorney present with him; that he had a right to remain silent; and that if he did remain--that if he did not remain silent, what he did say could be used against him in court. [Italics added.]"
 Counsel: "Now, Mr. Varner, in interrogating witnesses do you have a set package sentence or paragraph that you use to apprise them of their rights?"
 Officer Varner: "Well, I don't know whether it is a set package, necessarily, but it is comprised so it fills the requirements of them being advised, if that is what you mean; so we are satisfied that they are advised of their rights and they are aware of them." Then, according to Officer Varner, "... after I had introduced myself and advised him, he started crying, became quite emotional, and said, 'There's no use going any further. I did it, I took the woman's purse.' "
 Yet somewhat inconsistently, in view of the foregoing, Officer Varner then interrogated the defendant for over one *427 hour. Admittedly, during this period, the interrogator mentioned the fact that codefendant McMickle had admitted his participation in the charged crimes and had talked about Hildabrandt's participation in the incident. Officer Varner also admittedly mentioned the physical condition of the robbery victim and reiterated the fact that she had nearly died, and in this connection used the term "murder" on several occasions.
 The defendant, corroborated in major part by his codefendant, testified in substance that Varner began the interrogation with a description of a "strong-arm" robbery and that the police had enough evidence from the tire prints and credit card invoices to convict both the defendant and the codefendant. All he (sic, Varner) wanted to do was clear the matter off his books. McMickle testified specifically he was told at his interrogation, "You've got enough intelligence to cooperate; you could be in a lot more serious jam by an attempted murder charge." Both defendants were apparently told that the victim nearly died during surgery. At the trial the hospital records were introduced as an exhibit of the defendant, and they fail to indicate the robbery victim underwent any surgery. The appellant's interview differed from McMickle's in that Varner is alleged to have stated McMickle had confessed and had stated that Hildabrandt had been the party who had robbed the victim.
 At the time of his interrogation, the appellant had no prior record. He was 18 years of age, a high school graduate, but admittedly had been a slow reader and poor writer. In fact, he had been classified as a point one student in a four-point scale system of classification employed by California public schools, which, in turn, indicated a significantly lower than median intellectual ability.
 [1] When viewed as a whole, the extrajudicial statements made by appellant constituted acknowledgment of his participation in, and commission of, both of the charged offenses. As such, the statement was a declaration by the accused that he was guilty of the crimes charged and represented a confession. (People v. Ford, 200 Cal.App.2d 905, 920 [19 Cal.Rptr. 758].)
 The Attorney General initially asserts that appellant's version of the facts is contradicted and that the trial court's determination that the appellant freely, intelligently, and voluntarily made the confession or waived his right to counsel and right to remain silent precludes an inquiry into these *428 findings by the reviewing court. However, the Supreme Court, in Ashcraft v. Tennessee, 322 U.S. 143, 152 [64 S.Ct. 921, 925, 88 L.Ed. 1192, 1198], noted: "... [A]lways evidence concerning the inner details of secret inquisitions is weighted against an accused, ...."
 [2] Where the claim is that the prisoner's confession was procured in violation of due process of law guarantees, this court may make an independent examination of the record to determine the validity of the claim. (Lisenba v. California, 314 U.S. 219, 237 [62 S.Ct. 280, 290, 86 L.Ed. 166, 180]; Chambers v. Florida, 309 U.S. 227, 228 [60 S.Ct. 472, 473, 84 L.Ed. 716, 718-719]; Ashcraft v. Tennessee, supra, 322 U.S. at p. 147-148 [64 S.Ct. 921, 923, 88 L.Ed. 1192, 1195- 1196]; Malinski v. New York, 324 U.S. 401, 404 [65 S.Ct. 781, 783, 89 L.Ed. 1029, 1032]; People v. Berve, 51 Cal.2d 286, 290 [322 P.2d 97]; People v. Trout, 54 Cal.2d 576, 583 [6 Cal.Rptr. 759, 354 P.2d 231, 80 A.L.R.2d 1418].) [3] Before a confession may be utilized, it is incumbent upon the prosecution to demonstrate compliance with the constitutional requisites in its procurement. (People v. Rogers, 22 Cal.2d 787, 804 [141 P.2d 722]; People v. Jones, 24 Cal.2d 601, 608 [150 P.2d 801]; People v. Berve, supra, 51 Cal.2d 286, 291; People v. Trout, supra, 54 Cal.2d 576, 583.) [4] The testimony of the appellant and codefendant concerning the circumstances under which they made statements to Officer Varner is not contradicted in its entirety by his testimony, and insofar as it stands uncontradicted, we may consider it in determining the admissibility of the confession. (People v. Trout, supra; People v. Jones, supra.)
 [5a] The Attorney General next contends the appellant was advised of his constitutional rights, but failed to avail himself of their exercise. However, in view of the date of the interrogation, approximately a month and one-half before the decision in People v. Dorado, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], was enunciated, it is doubtful the advisement of rights at the beginning of the interrogation fulfilled the yet unannounced mandate of that case. Mr. Justice Tobriner, speaking for the Supreme Court in People v. Stewart, 62 Cal.2d 571, 581 [43 Cal.Rptr. 201, 400 P.2d 97], affirmed in Miranda v. Arizona, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694], held: "We cannot presume that the police acted in accordance with an unannounced constitutional principle." Arguendo, even if appellant was properly advised, the advisement was ineffectual under the circumstances. If such a *429 required advisement were given, it was mentioned only as a matter of form and in the words of Officer Varner: "I assume that he understood. I didn't press him on the issue."
 The United States Supreme Court in Carnley v. Cochran, 369 U.S. 506, 516 [82 S.Ct. 884, 8 L.Ed.2d 70] stated: "The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."
 A similar requirement exists as to the advisement of the privilege against self-incrimination. Recitals which merely formalize in passing these constitutional rights are inadequate. (Haley v. Ohio, 332 U.S. 596, 601 [68 S.Ct. 302, 304, 92 L.Ed. 224, 229].) In a custodial interrogation, a serious doubt exists as to the adequacy of the advisement purportedly made. The appellant asserts he did not remember being advised of the right to remain silent and could only vaguely recall that something had been said about a lawyer.
 While this factor may cast further doubt upon the admissibility of the confession, again the trial court, on this contested issue, found against the appellant. The crucial issue involved in this case requires a determination as to whether appellant waived his constitutional privileges in a custodial interrogation situation.
 During examination of the appellant at trial, the following testimony was elicited:
 Appellant: "Well, I think he said something about if I had a lawyer or something. Then all I know is I said my dad and my pastor--I talked to him today at the arraignment and they said they were going to get me one, and I said okay. Then he just started talking."
 District Attorney: "Now, you didn't tell Mr Varner that you wanted counsel present, did you?"
 Appellant: "I said something about a lawyer, and he says, 'That's okay; let's talk about this.' "
 District Attorney: "You told him you wanted one?"
 Appellant: "I told him my dad."
 District Attorney: "Did you tell him you wanted a lawyer?"
 Appellant: "No."
 From the questioning which followed during the interrogation, it appears the appellant was unaware that he had no duty to respond to police questioning or that he was entitled to have an attorney present to prevent him from forfeiting *430 any defense he may have had through ignorance and inadvertence.
 In the words of Mr. Justice Black in Johnson v. Zerbst, 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466, 146 A.L.R. 357, 362]: "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of right to Counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."
 [6] The burden of proof is upon the prosecution to show appellant's waiver of these rights was knowingly and intelligently made. (In re Johnson, 62 Cal.2d 325, 334 [42 Cal.Rptr. 228, 398 P.2d 420]; In re Woods, 64 Cal.2d 3 [48 Cal.Rptr. 689, 409 P.2d 913]; In re Tucker, 64 Cal.2d 15 [48 Cal.Rptr. 697, 409 P.2d 921].) [7] There is a presumption against the waiver of a constitutional right. (Glasser v. United States, 315 U.S. 60 [62 S.Ct. 457, 86 L.Ed. 680], reh. den. 315 U.S. 827 [62 S.Ct. 629, 86 L.Ed. 1222].)
 [8] The determination of whether there has been a free, knowing, and intelligent waiver of the right to counsel and the right to remain silent depends "in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." [Italics added] (In re Johnson, supra, 62 Cal.2d 325, 335; Johnson v. Zerbst, supra, 304 U.S. 458, 464 [58 S.Ct. 1019, 1023]; People v. Chesser, 29 Cal.2d 815, 822 [178 P.2d 761, 170 A.L.R. 246]; In re Connor, 16 Cal.2d 701, 710 [108 P.2d 10].) Among the additional factors which have been considered in other cases and which may be determinative of a free, knowing, and intelligent waiver by the accused are age (Gallegos v. Colorado, 370 U.S. 49 [82 S.Ct. 1209, 8 L.Ed.2d 325, 87 A.L.R.2d 614], reh. den. 370 U.S. 965 [82 S.Ct. 1579, 8 L.Ed.2d 835]; Lee v. Mississippi, 332 U.S. 742 [68 S.Ct. 300, 92 L.Ed. 330]; People v. Jones, supra, 24 Cal.2d 601, 609, 610); level of intelligence (Payne v. Arkansas, 356 U.S. 560 [78 S.Ct. 844, 2 L.Ed.2d 975]; Blackburn v. Alabama, 361 U.S. 199 [80 S.Ct. 274, 4 L.Ed.2d 242]); lack of prior experience with police (People v. Rogers, supra, 22 Cal.2d 787, 804, 805; People v. Borello, 161 Cal. 367 [119 P. 500, 37 L.R.A.N.S. 434]); and defendant's physical and mental state at the time of interrogation (People v. Underwood, 61 Cal.2d 113, 119 [37 Cal.Rptr. 313, 389 P.2d 937]; People v. Sigal, 221 Cal.App.2d 684 [34 Cal.Rptr. 767]). *431
 [9] The rationale for the mandatory prohibition against the use of incriminatory statements obtained by the police in violation of the accused's constitutional rights is the guaranty of due process. (People v. Price, 63 Cal.2d 370, 378 [46 Cal.Rptr. 775, 406 P.2d 55]; People v. Garner, 57 Cal.2d 135 [18 Cal.Rptr. 40, 367 P.2d 680].)
 [10] Adherence to due process guaranties would require a valid waiver to be unqualified and to be made only by a defendant who has been effectively advised of his rights and has an intelligent conception of the consequences of making a statement during interrogation in the absence of legal counsel. (In re Van Brunt, 242 Cal.App.2d 96, 105- 106 [51 Cal.Rptr. 136]; People v. Douglas, 61 Cal.2d 430, 434-435 [38 Cal.Rptr. 884, 392 P.2d 964]; In re Grayson, 242 Cal.App.2d 110 [51 Cal.Rptr. 145]; People v. Phillips, 229 Cal.App.2d 496, 503 [40 Cal.Rptr. 403].) If respondent's view of the proceedings is accepted, no such comprehension is shown by defendant's purported waiver for it is uncontested that defendant steadfastly refused to sign anything which he might recognize as incriminating, yet patently he did not realize his oral confession might subsequently be used against him. [5b] The evidence strongly indicates that defendant was never effectively advised of his rights and gives added weight to the other circumstances asserted which render the confession inadmissible. (Davis v. North Carolina, [June 20, 1966] 384 U.S. 737 [86 S.Ct. 1761, 16 L.Ed.2d 895].) The factors of defendant's age, minimal intelligence, lack of prior experience in criminal matters, when compounded by his emotional and physical condition at the time of interrogation, invalidate the asserted waiver. In Haley v. Ohio, supra, 332 U.S. 596, 601 [68 S.Ct. 302, 304, 92 L.Ed. 224, 229], the following language was utilized in requiring an intelligent and knowing waiver of constitutional rights before the commencement of interrogation of youthful suspects: "But we are told that this boy was advised of his constitutional rights before he signed the confession and that, knowing them, he nevertheless confessed. That assumes, however, that a boy of fifteen, without aid of counsel, would have a full appreciation of that advice and that on the facts of this record he had a freedom of choice. We cannot indulge those assumptions. Moreover, we cannot give any weight to recitals which merely formalize constitutional requirements. Formulas of respect for constitutional safeguards cannot prevail over the facts of life which contradict them." *432
 Nor is any different result compelled herein by reason of the difference in age between this defendant and the defendant in Haley. The U.S. Supreme Court has considered the age factor to be relevant in determining the admissibility of confessions in cases involving defendants of higher chronological age than appellant. (cf. Payne v. Arkansas, supra, 356 U.S. 560 [78 S.Ct. 844] [19]; Reck v. Pate, 367 U.S. 433 [81 S.Ct. 1541, 6 L.Ed.2d 948] [19]; Escobedo v. Illinois, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977] [22].) The Supreme Court of California has also utilized the age factor in People v. Jones, supra, 24 Cal.2d 601 [17]. Hence, no valid waiver of defendant's right to counsel and right to remain silent was effected.
 The import of the admission of a confession obtained in violation of defendant's rights was considered by the United States Supreme Court in Townsend v. Sain, 372 U.S. 293, 307 [83 S.Ct. 745, 754, 9 L.Ed.2d 770, 782], where it was held: "If an individual's 'will was overborne' or if his confession was not 'the product of a rational intellect and a free will,' his confession is inadmissible because coerced. These standards are applicable whether a confession is the product of physical intimidation or psychological pressure. ..." Similarly, in Rogers v. Richmond, 365 U.S. 534, 544 [81 S.Ct. 735, 741, 5 L.Ed.2d 760, 768], the essential issue for determination in deciding the admissibility of a confession, which was the product of a custodial interrogation, was described: "The attention of the trial judge should have been focused, for purposes of the Federal Constitution, on the question whether the behavior of the State's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined-- ...."
 In this particular circumstance, the confession obtained during the custodial interrogation should have been excluded. [11] We must therefore consider whether its admission constituted prejudicial error.
 In People v. Dorado, supra, 62 Cal.2d 338, 356, the Supreme Court concluded "the error is necessarily prejudicial when the statements are confessions." (Cf. People v. Jacobson, 63 Cal.2d 319, 329 [46 Cal.Rptr. 515, 405 P.2d 555]; People v. Schader, 62 Cal.2d 716, 728-729 [44 Cal.Rptr. 193, 401 P.2d 665]; People v. Price, 63 Cal.2d 370, 378 [46 Cal.Rptr. 775, 406 P.2d 55].) The rationale for this rule was considered by the Supreme Court in People v. Parham, 60 Cal.2d 378, 385 [33 Cal.Rptr. 497, 384 P.2d 1001], holding: "Almost invariably, *433 however, a confession will constitute persuasive evidence of guilt, and it is therefore usually extremely difficult to determine what part it played in securing the conviction. [Citations.] These considerations justify treating involuntary confessions as a class by themselves and refusing to inquire whether in rare cases their admission in evidence had no bearing on the result." Having determined the confession should not have been admitted, the only remaining issue to be resolved consists of its effect upon the trier of fact's deliberations. (People v. Schader, supra, 62 Cal.2d 716, 730.) Officer Varner's testimony relating to the confession was the only evidence at trial which connected appellant to the charged robbery.
 Because of the recent decision in Miranda v. Arizona, supra, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974], no opinion is herein expressed as to the admissibility on retrial of this case of appellant's spontaneous statement, "There's no use going any further. I did it, I took the woman's purse," which declaration was made before the interrogation commenced. Nor do we consider appellant's further contention that the inherently coercive atmosphere of the interrogation denied him due process of law by the admission of the confession obtained by this means since we have reversed the judgment on the ground that the appellant did not knowingly and intelligently waive his right to counsel and right to remain silent during the interrogation.
 Judgment reversed.
 McCabe, P. J., concurred.