[Crim. No. 11889.   Second Dist., Div. Five.   Mar. 23, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES EDWARD WRIGHT, Defendant and Appellant.

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Walter R. Jones, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, P. J.—The only question on this appeal is whether a security guard employed by the Los Angeles County General Hospital belongs to the "authorities" who must have advised a suspect of his constitutional rights before an incriminating statement by the suspect may be admitted in evidence. (*Miranda* v. *Arizona*, 384 U.S. 436, 472 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]; *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].)

Defendant had apparently burglarized an automobile which was parked at the Los Angeles County General Hospital. Security guards employed by the hospital took him to their office where they "detained him while awaiting the arrival of the police, which had been called." Sometime after this detention started, one of the guards asked defendant: "Well, why did you take this stuff?" He replied: "I saw it. It was attractive. I took it." He had never been advised of his constitutional rights.

Although the Attorney General argues fairly plausibly that the defendant's reply would have been admissible even if made to an arresting peace officer under the doctrine first announced in *United States* v. *Konigsberg,* 336 F.2d 884, 853, and followed in several California decisions, (see *People* v. *Perez,* 65 Cal.2d 709, 716-717 [56 Cal.Rptr. 312, 423 P.2d 240] and cases cited therein), we think perhaps the defendant has the better of that argument and will therefore assume that, had the security guard been a peace officer, a warning would have had to be given.

Neither *Miranda* nor *Dorado* purport to catalogue the persons who must give the respective warnings prescribed by those decisions. *Miranda* involved four separate cases in each of which the interrogating officers were policemen. (*Ibid.,* pp. 491-499.) The interviewers in *Dorado* came within the definition of "peace officer" of section 817 of the Penal Code. *Miranda* speaks variously of "law enforcement agency" (*Ibid.,* p. 442), "law enforcement officers" (*Ibid.,* p. 444), "police interrogation procedures" (*Ibid.,* p. 457), "police" (*Ibid.,* p. 465) and "authorities" (*Ibid.,* p. 472.) In *Dorado* the California Supreme Court uses the words "authorities" (*Ibid.,* pp. 353-354) and "law enforcement officials" (*Ibid.,* p. 355.)

On this appeal the Attorney General concedes that the mere fact that the security guard was not a "peace officer" within the meaning of section 817 of the Penal Code does not answer the problem.

Thus in *People* v. *Polk,* 63 Cal.2d 443, 449 [47 Cal.Rptr. 1, 406 P.2d 641], the person who elicited an incriminating statement was not a peace officer but a psychiatrist selected by the district attorney to examine the defendant. ''She [the psychiatrist] was thus an agent of the prosecution with no more right than any such agent to elicit admissions from defendants without their being informed of their rights.'' On the other hand it is clear that private persons who convey incriminating statements to the prosecution are not included in the term ''authorities.'' In *People* v. *Price,* 63 Cal.2d 370, 376-379 [46 Cal.Rptr. 775, 406 P.2d 55], a statement given to a television news reporter during an interview was held admissible, although the reporter had to get permission from a police officer in whose custody defendant was detained before being able to interview him.

Counsel for defendant has not found any case—and neither have we—where the interrogator was not the agent of a governmental department, the very function of which was to enforce the law. The purpose of a hospital is to make sick people well. The fact that the particular hospital here in question was owned and operated by a governmental agency is fortuitous. Private businesses employ security officers to protect persons and property on their premises, whose guns are just as menacing and whose badges just as shiny as those hired by public agencies, whatever their function may be.[1] In *People* v. *Crabtree,* 239 Cal.App.2d 789 [49 Cal.Rptr. 285], a confession was made to a security agent employed by a market. It was held admissible because he was a private citizen and it was not '' 'the authorities [which] had carried out a process of interogations that lent itself to eliciting incriminating statements.' '' (*Ibid.,* p. 790.)

It does not matter that a particular employee's duties may be confined to the protection of persons and property on his employer's premises or that his employer may be the state, a political subdivision thereof or a local entity. What does matter is whether he is employed[2] by an agency of government,

---

[1]Actually there is no evidence in the record before us that the security officer in question was uniformed. As we see the issue, this is immaterial. Confessions have been reversed because the ''authorities'' were represented by undercover agents, incarcerated with defendant on nonexisting charges, who presumably were not in uniform. (*People* v. *Arguello,* 63 Cal.2d 566, 570-572 [47 Cal.Rptr. 485, 407 P.2d 661]; *People* v. *Flores,* 236 Cal.App.2d 807, 809-812 [46 Cal.Rptr. 412].)

[2]By using the word ''employed'' we do not imply that the interrogator must be paid for his services or render them on a steady basis. We recall

federal, state or local, whose primary mission is to enforce the law.[3] This conclusion, it appears to us, is implicit from the purposes of the *Dorado* rule, as explained *In re Lopez*, 62 Cal.2d 368 [42 Cal.Rptr. 188, 398 P.2d 380].

It is suggested that the proper test to apply is not whether the governmental agency concerned is primarily charged with law enforcement, but whether it performs a governmental, as distinguished from a proprietary function. We decline to apply a dichotomy created in a different area of the law, found to be "illogical and inequitable" therein (*Muskopf* v. *Corning Hospital Dist.*, 55 Cal.2d 211, 217 [11 Cal.Rptr. 89, 359 P.2d 457]), abandoned by court and Legislature, to a field where it would make even less sense. A confession obtained by a security agent employed to watch over a public playground would be inadmissible (*Carr* v. *City & County of San Francisco*, 170 Cal.App.2d 48 [338 P.2d 509]), while the security guard employed on the golf course next door, run by the same city, could ask all the questions he wants. (*Plaza* v. *City of San Mateo*, 123 Cal.App.2d 103 [266 P.2d 523].)

The judgment is affirmed.

Hufstedler, J., and Stephens, J., concurred.

A petition for a rehearing was denied April 5, 1967, and appellant's petition for a hearing by the Supreme Court was denied May 17, 1967. Peters, J., was of the opinion that the petition should be granted.

---

that in *Massiah* v. *United States*, 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199], the "interrogation" was conducted by a person who had been jointly indicted with Massiah.

[3] The question, whether or not confessions made to employees of law enforcement agencies whose duties are not related to the primary mission of the agency come within *Dorado* and *Miranda* is not involved in the case at bar. Thus we do not speculate what the rule should be if the police station janitor, acting on his own, interrogates the suspect in his cell and obtains a confession.