[Crim. No. 14071. Second Dist., Div. Five. June 25, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES HAROLD CHEATHAM, Defendant and Appellant.

---

*Assigned by the Chairman of the Judicial Council.

460

Barry Nakell, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Phillip G. Samovar, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, P. J.—Defendant was convicted of second degree burglary. Two prior felonies charged against him in the information were found to be true. He appeals.

The premises burglarized were the second floor apartment of Mr. Calloway at 2500 South Hobart Boulevard. Calloway had left the apartment at about 7:45 in the morning. He returned at 4:30 the same day and noticed that the place had been ransacked. Two bottles of pills were missing, as were a radio, a sport coat, a pen and pencil set and a Waltham watch. His clothes were in pillow cases in the middle of the floor. A screen leading to the fire escape had been tampered with. He had given no one permission to enter the apartment.

George H. Dillon, a tenant in the same apartment house, saw defendant outside the Calloway apartment at about 10:45 a.m. He had never seen him before. He called Louis Lonney the manager who came up. Defendant told Lonney that he was waiting for his friend. Dillon then headed for the staircase to the third floor and noticed a light coat on the landing between the second and third floors which was wrapped around a radio. He then heard defendant say "I'll get my things and go." Defendant took the coat and the radio and the party headed downstairs. There Lonney caused his wife to call the police. Dillon and Lonney then sat with defendant in the lobby questioning him "in different ways" when defendant started to leave. Dillon grabbed him and there was a tussle between the two men "all the way down [to] the end of the hall." Defendant, however, got away from Dillon who shouted to one Bradfield, "get that guy, he's a thief." Eventually Bradfield caught defendant. Dillon caught up with them and held defendant's right arm twisted behind his back. Defendant spilled the contents of two pill bottles onto the ground. Dillon asked him: "Huh, you're one of these dope

guys, huh?'' Defendant replied: "I'll take the burglary but forget about these."

Lonney, the manager, corroborated Dillon's account. Further, he identified the pill bottles in defendant's possession as being Calloway's. He also testified that before the police arrived he went up to the Calloway apartment. The door was ajar. The television set which usually was in the Calloway bedroom was next to the door. Several pillow cases "loaded with things" were sitting on the floor. When the police came he showed them the apartment.

On appeal defendant claims: 1. certain items, admitted in evidence, were the product of an illegal search and seizure; 2. his confession of burglary to Dillon was coerced; 3. the confession was also obtained in violation of *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]; 4. he was inadequately represented at the trial level; and 5. that the prior convictions were not proved.

### Illegal Search and Seizure

Defendant claims that Dillon, Lonney and Bradfield had no right to effect an arrest and that anything produced as a result of the arrest was inadmissible. The same position had been taken by defendant's trial counsel who had objected to the admission of the radio, the sport coat, the pen and pencil holder, the two pill bottles and the Waltham watch.[1]

It is immaterial whether or not Dillon et al., had seen enough to entitle them to make a citizen's arrest. The cases uniformly hold that evidence, illegally obtained by private citizens, does not come within the exclusionary rule. (*People* v. *Katzman,* 258 Cal.App.2d 777, 786 [66 Cal.Rptr. 319]; *People* v. *Botts,* 250 Cal.App.2d 478, 481-483 [58 Cal.Rptr. 412]; *People* v. *Potter,* 240 Cal.App.2d 621, 630 [49 Cal.Rptr. 892]; *People* v. *Fierro,* 236 Cal.App.2d 344 [46 Cal.Rptr. 132]; *People* v. *Randazzo,* 220 Cal.App.2d 768 [34 Cal.Rptr. 65]; *People* v. *Johnson,* 153 Cal.App.2d 870, 873-877 [315 P.2d 468]; cf. *Burdeau* v. *McDowell,* 256 U.S. 465 [65 L.Ed. 1048, 41 S.Ct. 574, 13 A.L.R. 1159].)

---

[1]The defendant was wearing the sport coat when he was first seen by Dillon. It was torn during his flight. As far as the pen and pencil set and the watch are concerned we find no place in the record where they were connected to defendant. Calloway identified them as his and said that they were missing on his return to the apartment, but that is all. Perhaps they were part of the "things" in the pillow cases.

462

■ Defendant claims that since Dillon and Lonney purported to act under the authority of sections 834 and 837 of the Penal Code, permitting citizens' arrests in certain cases, "they were acting under statutory authority giving them official capacity."

The fact that sections 834 and 837 describe occasions when private citizens are privileged to deprive others of their freedom without committing the crime (Pen. Code § 236) and the tort of false imprisonment, does not turn such citizens into law enforcement officers.[2]

### Coerced Confession

In *People* v. *Berve,* 51 Cal.2d 286, 293 [332 P.2d 97] the court said: "No valid grounds for distinction are to be found in the fact that the coercion in this case was inflicted by civilians, and not the police. Decisions holding that confessions are inadmissible because they were rendered under conditions of threatened mob violence by civilians against an accused clearly imply such conclusion. . . ."

■ No objection to the admissibility of defendant's statement to Dillon was made other than that it was "immaterial." This would not matter on appeal if the record unerringly pointed to coercion (*In re Cameron,* 68 Cal.2d 487, 503 [67 Cal.Rptr. 529, 439 P.2d 633]; *People* v. *Underwood,* 61 Cal.2d 113, 126 [37 Cal.Rptr. 313, 389 P.2d 937]; *People* v. *Millum,* 42 Cal.2d 524, 526 [267 P.2d 1039]), but it does not. ■ All we know is that Dillon had defendant's arm twisted behind his back to prevent an escape, a hold which may be entirely painless, depending on the amount of pressure. Defendant himself took the stand. No one asked him whether or not he made the confession, but he did give a thumbnail description of his arrest without complaining of any undue force. He denied that he had had any pills. Obvi-

---

[2]It is interesting that when a policeman purports to make an arrest outside of his jurisdiction when not in hot pursuit, such an arrest can only be justified if it could have been made by a private citizen. In such a case the officer's right to search the person arrested is no greater than that of a private citizen and is therefore restricted to disarming the person arrested. (Pen. Code, § 846; *People* v. *Sandoval,* 65 Cal.2d 303, 311 [54 Cal.Rptr. 123, 419 P.2d 187]; *People* v. *Martin,* 225 Cal.App.2d 91, 94 [36 Cal.Rptr. 924].) Footnote 5 in *Sandoval* makes it clear, however, that if the officer goes further than a private citizen could, the fruits of his illegal search would not be admissible in evidence. This result must not be interpreted as a disapproval of the line of cases cited in the text. It is merely a necessary corollary to the prophylactic purpose of the exclusionary rule, which the courts cannot permit to be vitiated by policemen making citizens' arrests outside of their territory.

ously we cannot say as a matter of law that his confession was coerced.

### *Violation of Miranda v. Arizona, 384 U.S. 436*

■ Assuming for the sake of argument that Dillon's question: "Huh, you're one of these dope guys, huh?" was an interrogation, the confession would not have been admissible had it been elicited by a law enforcement officer. Since Dillon was not a policeman, as affirmatively appears from the record,[3] the confession was not barred by his failure to advise defendant of his constitutional rights. (*People v. Wright*, 249 Cal.App.2d 692 [57 Cal.Rptr. 781].)

We are urged to reconsider *People v. Wright, supra,* a decision written by this division. We still think, however, that *Wright* was correctly decided.

Since, as noted, the record shows that Dillon was not a policeman, we need not decide defendant's contention that it was the People's burden to so prove.

### *Inadequate Representation*

■ In defendant's opening brief he seems, at times, to concede that his trial representation was not the kind of "farce or sham" proscribed by *People v. Ibarra,* 60 Cal.2d 460, 464-466 [34 Cal.Rptr. 863, 386 P.2d 487]. Instead he argues that *Anders v. California,* 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396] and *People v. Feggans,* 67 Cal.2d 444 [62 Cal.Rptr. 419, 432 P.2d 21], prescribe a higher standard.

*Anders* does indeed command that counsel act "in the role of an advocate" (386 U.S. 743 [18 L.Ed.2d at p. 498]), but it does not require the impossible. Defendant is particularly unhappy that trial counsel's objection to the admission of the various stolen items started as follows: "I think perhaps for the record I ought to object . . ."

Even if on appeal defendant had a chance of upsetting the line of cases holding the evidence admissible, he obviously had none in the trial court. All that counsel could do—and did— was to preserve the point for the appeal.

The failure to object to the confession on the ground that it was coerced may well be due to an oversight, but can also be explained by counsel's knowledge that a more searching inquiry into the circumstances would not be helpful to his client. No inadequate representation, in that respect, appears

---

[3] Dillon was a 70-year-old retiree who lived at the apartment house. He was asked specifically whether he had ever been a policeman and he replied: "I have done some. I have done a little bit."

from the record before us. (*People* v. *Reeves*, 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35].)

The failure to object on *Miranda* grounds is immaterial in the light of *People* v. *Wright, supra.*

 Finally, counsel has attached an affidavit, signed by trial counsel, to the effect that he never investigated whether Dillon or Lonney were police officers or in any way connected with any "municipal, state or judicial law enforcement agency." We cannot consider this affidavit. If appellate counsel could prove lack of effective representation below by declarations or affidavits of trial counsel attached to the briefs, two lawyers working in tandem could effectively prevent any conviction from ever becoming final.

### The Prior Felonies

 The Attorney General concedes that no evidence of the two prior felonies was formally offered. We therefore follow the formula in *People* v. *Morton*, 41 Cal.2d 536, 540-545 [261 P.2d 523].

That part of the judgment finding defendant's prior convictions to be true is reversed and the cause is remanded to the trial court with directions to resentence defendant after the conclusion of a limited new trial on the issue of the prior felonies. In all other respects the judgment is affirmed.

Hufstedler, J., and Stephens, J., concurred.