Kenneth Herbert **HANNA** and Nathan Modell, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 24343.

United States Court of Appeals Fifth Circuit.

Nov. 18, 1968.

Rehearing Denied Dec. 30, 1968 En Banc.

James J. Hogan, Miami Beach, Fla., for appellants.

Wallace H. Johnson, Asst. U. S. Atty., Miami, Fla., William George Earle, Atty., Dept. of Justice, Washington, D. C., for appellee.

Charles Ryan, H. W. William Caming, New York City, amicus curiae.

## ON REHEARING

Before RIVES and GODBOLD, Circuit Judges, and HUGHES, District Judge.

RIVES, Circuit Judge:

On original hearing,[1] Judge Rives wrote what was intended to become the opinion of the Court. Judge Godbold concurred specially, and Judge Hughes dissented. On further consideration, it appears that Judge Rives' original opinion is in error both as to the facts and as to the law.

■ The factual errors are contained in footnotes 2 and 15. The inference was mistakenly drawn "that prior to the issuance of the subpoena duces tecum, the existence and some inkling of the contents of the communications were disclosed to the government by telephone company employees."[2] It now appears that that inference is unwarranted since is does not follow from the evidence that either the existence or the contents of the communications were unlawfully disclosed. Indeed, the telephone company's explanation of the disclosure in its amicus curiae brief is entirely consistent with the evidence:

"We are prepared to show, if the Court should deem it necessary, that after Southern Bell Telephone and Telegraph Company had gathered evidence of Hanna's fraud by wire, Mr. H. W. William Caming of this Company's Legal Department on December 14, 1965 telephoned Mr. Robert D. Peloquin of the Department of Justice and reported only the following: that evidence of electronic toll fraud had been discovered in the southern Florida area, which we would disclose under proper subpoena.

"Thus, no disclosure whatever, within the meaning of § 605, was made to the Government prior to Mr. Doyle's appearance before the federal grand jury on December 22 in response to its subpoena duces tecum (R. 50). *Not only was there no prior disclosure of the existence or contents of any particular communication, but also neither the suspect's name, occupation, nor telephone numbers were divulged.*" (Emphasis in the original.)

While Hanna and Modell are not bound by that statement, it does establish the incorrectness of the inference, and Hanna and Modell cannot reap any benefit from that mistaken inference. Of course, the burden of showing prejudicial error is upon the party attacking the judgment.[3]

■ In footnote 15 to Judge Rives' original opinion, he digressed to explain why he did not think that the telephone company necessarily had to record any parts of the conversations in order to perform its duty to require payment of the long distance tolls prescribed in its tariffs. The telephone company's explanation of its statutory duties and of its procedures in meeting those duties demonstrates the necessity for it to record

1. Opinion reported in 393 F.2d 700.

2. That erroneous inference was expressly relied on by Judge Godbold in his concurring opinion. See 393 F.2d at 708.

3. Neubauer v. United States, 8 Cir. 1958, 250 F.2d 838, 839; Hall v. Texas & N. O. Ry. Co., 5 Cir. 1962, 307 F.2d 875, 876.

limited parts of the conversations in order to require payment of the long distance tolls for illegal calls:

"No carrier can discriminate between its customers by extending preferential treatment to any. 47 U.S.C. §§ 202, 203(c). Knowingly to allow those committing electronic toll fraud to receive free service would constitute such discrimination. Furthermore, each carrier is enjoined, under pain of criminal penalty, not to neglect or fail to maintain correct and complete records and accounts of the movements of all traffic over its facilities. 47 U.S.C. § 220. Each carrier is also obliged to collect the federal excise tax levied upon each long distance call. 26 U.S.C. § 4251. * * *

"* * * there is no alternative at this state of the art but to make a limited recording of each illegal call —at least of the fraudulent dialing and opening salutations—to:

(i) identify the calling party (the user of the blue box), and others with whom he may be acting in concert * * * identification of the telephone line from which the fraudulent calls are originating must be followed by the more difficult identification of the specific individual making the calls—this is, of course, of paramount importance;

(ii) establish the location from which the calls are originating;

Most blue boxes, for example, are not cumbersome installations but rather, portable devices (some as small as a pack of cigarettes) which can be readily attached to telephone wires by alligator clips.

(iii) record the multifrequency tones being 'dialed' (key pulsed) by the blue box; and

(iv) determine whether the fraudulent call was completed (by the called party answering). (R. 63, 68–70, 81–84, 35–38, 42–45.)

"Distance (as well as time) is a factor in determining the proper billing charge for a long distance call. It is, therefore, necessary to ascertain each specific location called after the wrongdoer seizes the circuit."

Since it is not shown that the telephone company did more than was necessary for it to comply with the duties imposed by 47 U.S.C. § 220 and 26 U.S.C. § 4251, it does not appear that it exceeded the standards of reasonableness as Judge Godbold had originally thought.[4] Again, the burden of showing prejudicial error has not been sustained by the parties attacking the judgment.[5]

As to the law, Judge Rives' original opinion was in error in not recognizing what Judge Hughes expressed so clearly in her dissenting opinion:

"The leading case which sustains the view that, if the use of a communication facility is illegal, the right of privacy does not exist and the matter may be divulged, is Sugden v. United States, 226 F.2d 281 (9th Cir.1955) affirmed per curiam, 351 U.S. 916, 76 S.Ct. 709 [100 L.Ed. 1449]."

393 F.2d at 709.

This Court is bound by the decision in *Sugden* because it was affirmed by the Supreme Court in a terse per curiam: "The judgment is affirmed." 351 U.S. 916, 76 S.Ct. 709, 100 L.Ed. 1449. The judgment thus affirmed is summarized in the last paragraph of the opinion of the Ninth Circuit as follows: "The orders dismissing the causes and suppressing evidence are reversed for proceedings not inconsistent with this opinion." 226 F.2d at 286. That opinion had explained that the operators were not licensed until September 17th, "Therefore, they were not legally using the station before September 17th." The opinion had expressed the view, "that the trial court should reexamine the motions of defendants on the basis that free use of any radio communications made before September 17th can be made. The dis-

---

4. See concurring opinion, 393 F.2d 708.

5. See footnote 3, supra.

trict court will need a new hearing before ruling on the suppression of evidence and quashing the indictment." 226 F.2d at 285. Clearly, in affirming the judgment the Supreme Court placed its stamp of approval on that much of the opinion. Indeed, that was the only part of the opinion adverse to the defendants at whose instance certiorari was granted. 350 U.S. 952, 76 S.Ct. 342, 100 L.Ed. 829.

■ No sound distinction as to the applicability of section 605 can be drawn between wire and radio. The original statute, written in almost identical terms, applied only to radio communications. Act of Feb. 23, 1927, ch. 169, § 27, 44 Stat. 1162, 1172. Those provisions were extended to wire communications by section 605 without any distinction being made between the two methods of communication. It must, therefore, be conceded that when the use of the communication facility itself is illegal, section 605 has no application, at least insofar as concerns the person guilty of such illegal users. Whatever we might otherwise think, this Court is bound by the *Sugden* decision. Section 605 being inapplicable as to Hanna, the district court properly admitted against him the tape recordings and gambling paraphernalia found as a result of those recordings.

As to Modell, the case may stand differently. In *Sugden,* supra, the Ninth Circuit commented that, "It seems none [no license] is required for the operator of the mobile end of the two way radio apparatus." 226 F.2d 282. That operator, however, was not a defendant, and there was thus no holding that any evidence of the conversation would be admissible against him. Here Modell is a defendant, and, concededly, there was no proof that he knew that Hanna was using the telephone illegally.[6] Since Modell, in the imagery of Sugden, 226 F.2d 285, was "legally on the air," section 605 applied as to him.

■ There was, however, no violation of section 605 in obtaining and divulging the statements of Modell *if* the telephone company employee who learned of the communications and thereafter divulged their existence and contents was, within the meaning of the first clause of section 605, "[a] person * * * transmitting, or assisting in transmitting," the communication. Further consideration has persuaded Judges Rives and Godbold to agree with Judge Hughes that, under the circumstances of this case, "a security officer, in the light of present day developments, should be included among company employees engaged in the transmission of communications." That is true because the obligations imposed upon the telephone company by the Communications Act and the Internal Revenue Laws, 47 U.S.C. §§ 202, 203, 220; 26 U.S.C. § 4251, both authorized and required it to discover the existence and parts of the contents of the illegal calls. Under those laws, such discovery becomes a part and parcel of the transmission of the communications. Section 605 provides that information thus lawfully obtained may be divulged "in response to a subpoena issued by a court of competent jurisdiction, or on demand of other lawful authority." It now appears that the existence and parts of the contents of the communications

---

6. In the district court the United States Attorney unequivocally conceded: "As far as Mr. Modell is concerned, we certainly concede that there is absolutely no proof that he was using one of these blue boxes and there is no proof even that he knew a blue box was being used." If Modell had also been a trespasser on the line, the probability is that he would have been using a "black box." The witness Doyle testified as follows:

"THE COURT: What is a black box as distinguished from a blue box?
"THE WITNESS: A black box is also an electronic device. It is placed on the terminating end to the telephone call. The black box, in effect, shows our toll billing network that that telephone call was never answered, when, in fact, it was answered and people talked. That is the basic difference."
There was no proof that a "black box" was placed on Modell's end of the line.

were both lawfully obtained and lawfully divulged, and that there was no violation of section 605. Hence, the district court properly admitted against Modell the tape recordings and gambling paraphernalia found as a result of those recordings.

The judgments of conviction of both Hanna and Modell are therefore

Affirmed.

### ON PETITION FOR REHEARING EN BANC

Before RIVES and GODBOLD, Circuit Judges, and HUGHES, District Judge.

PER CURIAM:

The Petition for rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing en banc is denied.