[Crim. No. 7344. First Dist., Div. One. July 25, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. FRANK GARBER et al., Defendants and Appellants.

Chargin & Parker, Alan A. Parker and James Martin Mac-
Innis for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Robert R. Granucci
and Clifford K. Thompson, Jr., Deputy Attorneys General,
for Plaintiff and Respondent.

Pillsbury, Madison & Sutro, John A. Sutro, Francis N. Mar-
shall and Terrence A. Callan as Amici Curiae on behalf of
Plaintiff and Respondent.

MOLINARI, P. J.—Defendants appeal from judgments of
conviction following trial by the court. All three defendants
were convicted of bookmaking (Pen. Code, § 337a, subd. 2);
of conspiracy to obtain telephone service by fraud (Pen. Code,
§ 502.7, subd. (a), 502.7, subd. (b)); of conspiracy to commit
the offense of unlawful use of telephone lines and equipment
(Pen. Code, § 591); and of conspiracy to illegally wire tap.
(Pen. Code, § 640.) For the reasons hereinafter stated, we
have concluded that the judgments must be affirmed.

### Facts

A multi-frequency signal generator or "blue box" is a de-
vice designed to enable the user to avoid long-distance tele-
phone charges. The user first dials a toll-free long-distance
information number. Then he activates the "blue box" to
produce a 2,600-cycle tone which terminates the connection
with the information operator although the user still has ac-
cess to the open trunk line. As long as the line is held open the
user can utilize impulses from the "blue box" to place any
number of long-distance telephone calls without the telephone
company having any record of areas called or charges in-
curred. The telephone company records simply indicate that a
free call has been made from a given telephone number. On
occasion, in order to determine if there is trouble on the lines,
the telephone company "prints out" the unbilled compu-
terized data pertaining to toll-free information calls. From
April through November 1966 such "print outs" indicated
that 2,020 long-distance information operator calls were made
from number 361-1261. Defendant Garber was the subscriber
to this telephone number. A number of the calls were unusu-
ally lengthy. The "print outs" also showed that from August
to November 1966 approximately 40 such long-distance opera-
tor calls were made from another number (377-4275) listed to
defendant Garber. Other computer "print outs" indicated

345 information calls made in a two-month period from one telephone number listed to defendant Noto and 14 such calls from another number of his. Some of these calls were of an unusual length. Still other "print out" information obtained by the company showed numerous long-distance calls from numbers listed to defendant Garber under a false name and installed in apartments actually rented to defendant Teran. The telephone company next checked the telephone lines and discovered no trouble in the lines.

The telephone company began monitoring one of Garber's numbers (371-1261) on October 24, 1966, using a device designed to monitor only those outgoing calls commencing with the 2,600-cycle tone generated by the "blue box." After about 28 hours of actual monitoring, this procedure was discontinued on November 2, 1966. During the time the company was monitoring, only 65 minutes in "blue box" calls were actually overheard and recorded by the company. Apparently none of the other aforementioned numbers were monitored.

On November 29, 1966, the telephone company met with law enforcement officials and informed them that they had the "print out" information indicating the use of "blue boxes" at the residences of all three defendants. The telephone company representatives also informed the officials that they had monitored the one telephone at defendant Garber's residence. At this time company representatives did not divulge the contents or subject matter of the recordings made during the monitoring procedure. The district attorney made a written demand for the recordings and they were subsequently produced on November 30, 1966. The recordings were introduced in evidence at the grand jury hearing as well as at the trial and it was stipulated at the trial that these recordings clearly indicated bookmaking activities. The admission of this evidence was over the objection of all defendants.

On December 11, 1966, a warrant was procured for the search of the premises at 2395 New Jersey Avenue, San Jose, the residence address of defendant Garber. On the morning of December 12, 1966, San Jose police officers went to the address to execute the warrant. Although they had information that defendant Garber was not at home, the officers went to the door and rang the bell. After receiving no response they rang the bell a second time. They then heard some unintelligible noises in the house, the sort of noises which indicated movement within the house. One of the officers then kicked open the door so that an entry could be made. Mrs. Garber and a

minor child were in the house. They had apparently been bathing. Approximately 40 seconds elapsed between the forced entry and the first ringing of the doorbell. In the search that followed, the officers found one piece of lined paper with first names, initials and telephone numbers, one piece of lined paper with defendant Noto's name and a series of telephone numbers; a long-distance telephone bill with defendant Noto's name, a newspaper clipping concerning wiretapping and some printed sheets on "Bowl Games." The officers also saw a box similar to a "blue box" but did not seize it. The items taken were admitted into evidence before the grand jury and at trial defense counsel objected to their admission on the ground that the officers had not properly identified themselves pursuant to the provisions of Penal Code section 1531.

On December 11, 1966, a warrant for the search of the Santa Clara premises of defendant Noto was also obtained. The warrant was executed on the morning of December 12, 1966, at which time defendant Noto admitted the officers. During the search a number of dated publications entitled "The National Daily Reporter" were found. Accounting sheets and other bookmaking paraphernalia were also uncovered. A "blue box" was also discovered and seized. These items were all introduced into evidence at the grand jury hearing.

No warrant was obtained for the search of the apartment of defendant Teran. Police began surveillance of this apartment on the evening of December 11, 1966. The next morning the telephone company put its monitoring device on the telephone line to this apartment. A little after 10 a.m., by use of this monitoring equipment, a telephone company representative heard the 2,600-cycle tone emitted by a "blue box." Law-enforcement officials were informed but no record of calls was made because the equipment was not properly adjusted. By prearrangement police officers were advised that the device was being used and they then went to the apartment. The officers knocked on the door and defendant Teran appeared at a window and asked who was there. One of the officers held his sheriff's identification card to the window for Teran to read. Teran then disappeared and when there was no further response, the officers forced entry. Defendants Garber and Teran were both found in the apartment. An adding machine and almost $3,000 in currency was discovered. Two of the "blue box" devices were also recovered, along with a number of racing journals and betting records. Both Teran and Garber were placed under arrest. At trial, counsel for defendant

Teran objected to the admission of this evidence.

A Federal Bureau of Investigation specialist in bookmaking investigation testified before the grand jury to the effect that the material recovered during the searches was used for bookmaking activity.

### Contentions

All defendants contend that the convictions must be reversed because they are based on evidence obtained in violation of 47 U.S.C.A. section 605 prohibiting the unauthorized publication or use of certain communications by wire or radio, and that the monitoring procedure violated the right of privacy guaranteed by the Fourth Amendment. Defendants Garber and Noto also contend that the evidence obtained at Garber's residence was inadmissible because the officers who executed the search warrant failed to comply with the provisions of Penal Code section 1531. Defendant Teran also argues that the evidence obtained at his apartment is inadmissible because the officers did not have a search warrant. At oral argument Teran also contended that the forcible entry of Teran's residence was in violation of Penal Code section 844.

### The Fourth Amendment

In *Katz* v. *United States* (1967) 389 U.S. 347, 353, 354-359 [19 L.Ed.2d 576, 583, 584-586, 88 S.Ct. 507], it was held that electronic eavesdropping by law enforcement authorities upon private conversations is a search and seizure within the meaning of the Fourth Amendment and that such eavesdropping meets constitutional standards only when authorized by a neutral magistrate upon a showing of probable cause under precise limitations and appropriate safeguards. (See also *Desist* v. *United States* (1969) 394 U.S. 244, 246 [22 L.Ed.2d 248, 253, 89 S.Ct. 1030].) This rule applies, however, only to cases in which the prosecution seeks to introduce the fruits of an electronic surveillance conducted after December 18, 1967, the date of the *Katz* decision. (*Desist* v. *United States, supra.*)

We note, moreover, that although evidence obtained in violation of the Fourth Amendment is inadmissible in state courts, the amendment does not apply to searches by a private individual unless such individual is wilfully participating in a joint activity with a state agent who either requests the illegal search or has knowledge of it but fails to protect the third party's rights. (*Stapleton* v. *Superior Court*, 70 Cal.2d 97, 100-101, 102 [73 Cal.Rptr. 575, 447 P.2d 967]; see

*Burdeau* v. *McDowell* (1921) 256 U.S. 465 [65 L.Ed. 1048, 41 S.Ct. 574, 13 A.L.R. 1159]; *People* v. *Cahan*, 44 Cal.2d 434, 445 [282 P.2d 905, 50 A.L.R.2d 513].) In the instant case the electronic eavesdropping was by the telephone company and there is no evidence of any government participation. In any event, the electronic surveillance took place in 1966 and therefore is not subject to the ruling of the *Katz* decision.[1]

### Applicability of 47 U.S.C.A. Section 605

 Defendants contend that the tape-recorded conversations resulting from monitoring of defendant Garber's telephone should have been excluded from evidence because they were obtained in violation of 47 U.S.C.A. section 605, which prohibits the unauthorized publication or use of certain communications.[2] This contention is without merit because at the time of the alleged violation the federal provision had no application to the admission of evidence in state courts.

In *Schwartz* v. *Texas* (1952) 344 U.S. 199, 201 [97 L.Ed. 231, 234, 73 S.Ct. 232], it was held that communications intercepted in violation of 47 U.S.C.A. section 605 were admissible in a state court. (See *People* v. *Channell* (1951) 107 Cal.App. 2d 192, 198-199 [236 P.2d 654].) The *Schwartz* case was overruled in *Lee* v. *Florida* (1968) 392 U.S. 378 [20 L.Ed.2d 1166, 88 S.Ct. 2096], which held such evidence to be inadmissible in state court trials. The basis of the holding in *Lee* was that *Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933] had overruled *Wolf* v. *Colorado* (1949) 338 U.S. 25 [93 L.Ed. 1782, 69 S.Ct. 1359] upon which *Schwartz* had relied for the holding that state courts "were free to decide for themselves whether to condone violations of federal law by accepting the products of such violations as evidence." (P. 385 [20 L.Ed.2d at page 1172].) However, in *Fuller* v. *Alaska* (1968) 393 U.S.80 [21 L.Ed.2d 212, 89 S.Ct. 61], the court held that *Lee* was to be applied only to

---

[1]The instant case was tried on October 30, 1967.

[2]Section 605 of the Federal Communications Act provides, in pertinent part, ''No person receiving or assisting in receiving, or transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, to any person other than the addressee, his agent, or attorney, or to a person employed or authorized to forward such communication to its destination, . . . or on demand of other lawful authority; and no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; . . .''

trials in which such evidence is sought to be introduced after June 17, 1968, the date of the *Lee* decision. In the present case the evidence in question was introduced prior to the decision in *Lee*.

We are satisfied, moreover, that under the facts of this case there was no violation of the statute on several grounds. ■ We are particularly impressed by the holding in *United States* v. *Sugden*, 226 F.2d 281, 285 (affirmed per curiam, 351 U.S. 916 [100 L.Ed. 1449, 76 S.Ct. 709]), that where the use of a communication facility is illegal the right of privacy does not exist and the intercepted matter may be divulged. (See also *Hanna* v. *United States*, 404 F.2d 405, 407-408; *Brandon* v. *United States*, 382 F.2d 607, 611.) In *Hanna*, a case involving the subject statute, tape recordings divulged by a telephone company and gambling paraphernalia found as a result of such recordings were properly admissible against a defendant who had made illegal use of communication facilities and whose communications had been intercepted by the telephone company.

■ We also agree with the analysis of *Hanna* that because the law requires telephone companies to discover illegal telephone calls (47 U.S.C.A., §§ 202, 203, 220) investigative work carried out to discover such calls has become a part of the transmission of communications. It was there held that " 'a security officer, in the light of present day developments, should be included among company employees engaged in the transmission of communications.' " (404 F.2d at p. 408; see also *Brandon* v. *United States, supra,* 382 F.2d 607.) ■ Accordingly, since the first part of 47 U.S.C.A. section 605 provides that persons "receiving or assisting in receiving, or transmitting, or assisting in transmitting" communications can publish or divulge such communications "in response to a subpoena issued by a court of competent jurisdiction, or on demand of other lawful authority," the divulging of such communications in response to a proper demand was not in violation of 47 U.S.C.A. section 605. In the instant case the monitoring of defendant Garber's telephone was carried out by a security agent for the telephone company and the communications properly intercepted by him were divulged upon written demand of the district attorney.

■ In *Bubis* v. *United States*, 384 F.2d 643, a case involving a "blue box," although the court was of the opinion that a security officer was not an employee engaged in the transmission of communications (p. 646), the following principle was clearly stated: "When a subscriber of a telephone system

uses the system's facilities in a manner which reasonably justifies the telephone company's belief that he is violating his subscription rights, then he must be deemed to have consented to the company's monitoring of his calls to an extent reasonably necessary for the company's investigation. [Citation.]'' (P. 648.) It was there held that the recordings were inadmissible because the interception lasted three months and exceeded what was reasonable and necessary.[3]

## The Arrest of Teran

Defendant Teran contends that the officers did not have reasonable cause to arrest him and that the evidence obtained in the search of his residence should have been excluded because the officers did not obtain a search warrant, although the search had been planned for some time.

Turning first to defendant's contention that there was no reasonable cause for the arrest, he notes that the officer in charge was informed by the telephone company security officer that the ''blue box'' at the Teran residence was in use on the morning of December 12, 1966, prior to the time the officers went to the premises. Defendant claims that the ''reasonable cause'' to arrest was contrived and particularly emphasizes the fact that no recording of the communication in question was made. We find no merit in defendant's argument and conclude that the information received from the telephone company security officer concerning the violation of the wiretapping law provided sufficient probable cause to support an arrest. As we stated in *People* v. *Gardner,* 252 Cal.App.2d 320 [60 Cal.Rptr. 321]: ''[A] citizen who purports to be the victim of or to have witnessed a crime is a reliable informant even though his reliability has not theretofore been proven or tested. [Citations.] The rationale underlying this principle is that such a person is 'more than a mere informer. He is an observer of criminal activity, who by calling the police, acts openly in aid of law enforcement.' [Citations.]'' (Pp. 324-325.) Here the telephone company officer knew of criminal activity when he heard the signal which indicated a ''blue box'' was being used. He assisted the officers by passing along this information and under all the circumstances of this case can most assuredly be considered a reliable informer.

---

[3]The *Bubis* court strongly suggested in a footnote (fn. 5, p. 648) that although the interception was lawful, it did not mean to suggest that the disclosure was lawful.

■ Since there was reasonable cause for Teran's arrest, a reasonable search incidental to his arrest was proper and not violative of the Fourth Amendment. (*United States* v. *Rabinowitz*, 339 U.S. 56, 60 [94 L.Ed. 653, 657, 70 S.Ct. 430] ; see *People* v. *Brooks*, 234 Cal.App.2d 662, 667 [44 Cal.Rptr. 661].) This is true even though the officers may have previously had sufficient information to justify the issuance of a search warrant. As pointed out in *Rabinowitz, supra*, "The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable." (P. 66 [94 L.Ed. p. 660].)

■ At oral argument we noted that in *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], decided on June 23, 1969, a new rule was announced by the United States Supreme Court overruling the *Rabinowitz* case insofar as it held that a warrantless search incident to a lawful arrest extends generally to the area that is considered to be in the possession or control of the person arrested. In *Chimel* it was held that such a search is limited to a search of the arrestee's person and the area within his immediate control, that is, "the area from within which he might have obtained either a weapon or something that could have been used as evidence against him." (23 L.Ed.2d at p. 697.) Counsel for defendant Teran argued that the items obtained in the search were located within the area specified by *Chimel*. ■ In *People* v. *Castillo*, 274 Cal.App.2d 508 [80 Cal.Rptr. 211], it was held that in *Chimel* the Supreme Court intended that the new rule should be given prospective application to searches conducted after the date of its decision. The *Castillo* court reasoned that the rationale upon which *Desist* v. *United States, supra*, 22 L.Ed.2d 248, held *Katz* v. *United States, supra*, 389 U.S. 347 (holding electronic eavesdropping to be a search and seizure within the meaning of the Fourth Amendment) should apply prospectively was equally applicable to the *Chimel* case. We agree with *Castillo*. Therefore, we need not determine whether the scope of the search exceeded the new rules of *Chimel*. **[11b]** Since the instant search was within the area approved by *Rabinowitz*, we hold that the search was reasonably incident to the arrest.

### Compliance With Penal Code Sections 1531 and 844

Defendants Garber and Noto argue that the evidence uncovered during the search of Garber's residence should have been excluded because the police officers made a forcible entry

in order to execute the search warrant. According to Penal Code section 1531,[4] "The officer may break open any outer or inner door of a house . . . to execute the warrant, if, after notice of his authority and purpose, he is refused admittance." As already noted, the officers forcibly entered the residence after ringing the doorbell twice in a 40-second period and after hearing some "unintelligible sounds" within the house.

Defendant Teran argues that the forcible entry into his residence was in violation of section 844 which provides, in pertinent part, that ". . . in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

 In proceeding to discuss these respective contentions we note, initially, that an entry of a house in violation of sections 844 or 1531 renders any following search and seizure unreasonable within the meaning of the Fourth Amendment. (*Greven* v. *Superior Court,* 71 Cal.2d 287, 290 [78 Cal. Rptr. 504, 455 P.2d 432]; *People* v. *Rosales,* 68 Cal.2d 299, 304-305 [66 Cal.Rptr. 1, 437 P.2d 489].) We also observe that these two sections have been held to be "identical in principle" insofar as their announcement requirements are concerned. (*People* v. *Villanueva,* 220 Cal.App.2d 443, 447 [33 Cal.Rptr. 811]; *Greven* v. *Superior Court, supra,* at p. 292, fn. 6; *People* v. *De Santiago,* 71 Cal.2d 18, 24, 28 [76 Cal.Rptr. 809, 453 P.2d 353]; *People* v. *Benjamin,* 71 Cal. 2d 296, 299 [78 Cal.Rptr. 510, 455 P.2d 438].) Additionally, we note that the rule of announcement as set forth in these sections is not complied with unless the officers prior to entry give notice of their authority. (*Greven* v. *Superior Court, supra,* at p. 293; *People* v. *Benjamin, supra.*)

In *Greven* it was pointed out that the cases holding the requirements of section 844 satisfied by " 'substantial compliance' " involved situations where the officers actually identified themselves but failed to announce their purpose. (71 Cal.2d at pp. 291-292; see *People* v. *Marshall,* 69 Cal.2d 51, 55-56 [69 Cal.Rptr. 585, 442 P.2d 665]; *People* v. *Cockrell,* 63 Cal.2d 659, 665-666 [47 Cal.Rptr. 788, 408 P.2d

---

[4] All statutory references hereinafter made, unless otherwise indicated, are to the Penal Code.

116]; *People* v. *Carswell,* 51 Cal.2d 602, 607 [335 P.2d 99]; *People* v. *Martin,* 45 Cal.2d 755, 762-763 [290 P.2d 855].) Since section 1531, dealing with search warrants, is the counterpart of section 844, the rule of announcement recognized in *Greven* is equally applicable to the announcement requirement set forth in section 1531. Accordingly, the cases which have held that the requirements of section 1531 may be excused where specific factual circumstances give rise to a "reasonable belief on the part of the officers that unannounced entry was necessary to prevent destruction of evidence, discourage escape, or insure the officers' safety" (*People* v. *Hamilton,* 71 Cal.2d 176, 178 [77 Cal.Rptr. 785, 454 P.2d 681]; see e.g., *People* v. *Scott,* 259 Cal.App.2d 268, 279 [66 Cal.Rptr. 257]; *People* v. *Cain,* 261 Cal.App.2d 383, 389 [67 Cal.Rptr. 922]), must be understood to apply only to the failure to announce the purpose for which admittance is desired. (See *People* v. *Benjamin, supra,* 71 Cal.2d 296, 298.)

▋ Here, with respect to the entry into Garber's residence, the officers did not comply with section 1531 at all. It is clear that they gave no notice of their authority at any time prior to the entry, and that, accordingly, there was no compliance with the indispensable rule of announcement of authority delineated in *Greven.* We need not, therefore, discuss whether the circumstances excused compliance with the announcement of the purpose for the entry.

▋ Accordingly, we hold that the entry in this case was not effected in compliance with the provisions of section 1531, that the search and seizure which was undertaken subsequent to such entry was unreasonable and unlawful, and that the fruits of such search and seizure were inadmissible in evidence. ▋ Our conclusion, however, does not require a reversal because the error was harmless within the rule set out in *Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]. The evidence which was seized consisted of a few items of documentary evidence which was merely cumulative with the considerable amount of evidence which was properly received in evidence. We conclude, therefore, that the evidence submitted against defendants Garber and Noto conclusively established their guilt and that the introduction in evidence of the items of documentary evidence obtained at the Garber residence did not contribute to the verdicts against them. Accordingly, we are able to declare a belief that the error in admitting such evidence was harmless beyond a reasonable

doubt. (*Chapman* v. *California, supra,* at pp. 23-24 [17 LEd. 2d at pp. 710-711].)

Adverting to the entry of Teran's residence, we perceive no violation of section 844. When the officers knocked at the door and Teran appeared at the window and asked who was there, the officers announced their authority when one of the officers held his sheriff's identification card to the window for Teran to read. This satisfied the minimum compliance required by section 844 as delineated in *Greven, supra.* With respect to the second requirement of section 844 that the officers explain "the purpose for which admittance is desired," due to exigent circumstances substantial compliance with the provisions of the section was achieved and literal compliance was not required. When Teran disappeared and made no further response after the officers identified themselves, these circumstances and the facts already known by the officers concerning the telephone monitoring and the use of a "blue box" at the Teran residence were such as to give rise to a reasonable belief on the part of the officers that a demand for admittance would be futile and that an entry without an express announcement of purpose was necessary to prevent the destruction of evidence and to discourage escape.

The judgments are affirmed.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied August 13, 1969, and appellants' petition for a hearing by the Supreme Court was denied October 15, 1969.