[Crim. No. 9703. First Dist., Div. One. June 2, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
SANTO J. MANGIEFICO, Defendant and Appellant.

## COUNSEL

Norton Tooby, under appointment by the Court of Appeal, and Romines, Wolpman, Tooby, Eichner, Sorensen, Constantinides & Cohen for Defendant and Appellant.

Evelle J. Younger, Attorney General, Robert R. Granucci and H. F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOLINARI, P. J.**—Defendant appeals from a judgment of conviction and sentence,[1] following a jury trial, for violation of Insurance Code section 556 (false or fraudulent insurance claim), and Penal Code sections 548 (defrauding an insurer), 450a (arson of personal property with intent to defraud an insurer) and 448a (arson of a private building other than a dwelling).

Defendant contends that his conviction must be reversed because it is based upon evidence admitted in violation of his constitutional rights in two respects. First, he argues that the testimony of George Berdan, a consulting fire investigator, and certain photographs taken by him were improperly admitted as they were the product of a search conducted without a proper warrant and without defendant's consent. Second, defendant asserts that a tape recording of his interview with Berdan was improperly admitted as the statements contained therein were procured without first advising him of his rights under *Miranda* v. *Arizona*, 384 U.S. 436, 444 [16 L.Ed.2d 694, 706, 86 S.Ct. 1602, 10 A.L.R.3d 974], which requires that an accused be advised prior to his being questioned that he has a right to remain silent, that any of his statements may be used against him, and

---

[1] Under Penal Code section 1237 a sentence is deemed a final judgment of conviction.

that he has the right to the presence of an attorney, either retained or appointed. We have concluded that these contentions are without merit and, accordingly, that the judgment must be affirmed.

The instant case arose as a result of a fire which occurred on January 6, 1970, in the premises located in Santa Rosa used by defendant and Sol Kaye as a television and appliance store. A fire insurance policy insuring the contents of said premises was issued by Safeco Insurance Company. The fire was investigated by Alvis Austin, the local adjuster for Safeco, Michael Turnick, the fire marshal, and Berdan.

Berdan was a self-employed consulting fire investigator. He holds a private investigator's license and was hired by Safeco to determine the origin and cause of the subject fire. Berdan arrived in Santa Rosa on January 13 and he contacted Austin and Turnick. Several days later he contacted the police chief in order to inform him of the purpose of his presence. Berdan stated that he did not discuss the fire or its cause with anyone from the fire department prior to his investigation of the premises nor was he told anything prior to his investigation.

Berdan was at the scene of the fire on the 13th and 14th of January, and he returned for a few hours on the 21st, 22d and 23d. At various times while Berdan was conducting his investigation of the fire at the insured premises Austin and Turnick were also present as were Battalion Chief Young and Captain Stedman of the fire department. After Berdan had determined the origin of the fire he discussed the fire department's fire extinguishing procedure with Turnick, Young and Stedman in order to determine the time at which the fire started.

On January 21 Berdan interviewed defendant and Kaye at the offices of Safeco. Austin was present during the interview. The conversation was recorded. Defendant stated in the conversation that he began closing the store around quarter to nine on the evening of the fire and that he left the building at approximately ten to nine.[2]

Berdan suggested that the fire department reenact what was done on the night of the fire so as to cross-check the conclusions reached as a result of their previous discussion. Young testified that after talking with Berdan and the fire chief he decided that it would be a good idea to "try to reconstruct it." By so doing, if he should be called to testify, he "would

---

[2]At the trial the tape of Berdan's interview of defendant was played. The jury made a request to listen to the tape again during their deliberations and the judge permitted them to take it into the jury room.

be more than just guessing." The reconstruction of the fire was conducted on February 4 under the supervision of Turnick.

Although Berdan may have taken some notes during his investigation, he no longer had them at the time of the trial. Berdan testified largely from numerous photographs he had taken. Berdan did not obtain laboratory analysis of any of the material he examined, nor did he retain the material for use as evidence. Upon completing his investigation, Berdan left the material which he had inspected at the scene of the fire. It was Berdan's opinion that the fire originated at two distinct places in the building. Berdan stated that in his opinion the cause was arson. He said that the fire ignited at both places at the same time and that paper products were used. Berdan had concluded from his examination that the fire started at 8:49 p.m. Berdan made a report and sent a copy to Turnick. Berdan received a copy of the report made by the City of Santa Rosa and he testified he "may have" sent a copy to Austin.

Adverting to defendant's primary contention, we perceive it to be that a private investigator, licensed by the state, is in essence a public law enforcement official. From this premise, defendant goes on to assert that a private investigator is subject to the restraints of the Fourth Amendment and that evidence which he obtains in violation of the Fourth Amendment must be excluded. Defendant argues that this is compelled by the necessity of deterring lawless conduct on the part of private investigators. Defendant further asserts that he had a reasonable expectation of privacy with respect to his place of business, and that he neither expressly nor impliedly consented to the search of the premises by the private investigator.

Defendant asks us to hold that a private investigator is, in essence, a law enforcement official. This contention has never been expressly ruled upon by the California Supreme Court. In *Stapleton* v. *Superior Court,* 70 Cal.2d 97, 100-101, footnote 3 [73 Cal.Rptr. 575, 447 P.2d 967], the court observed that it was "not called upon to decide whether searches by private investigators and private police forces should be held subject per se to the commands of the Fourth Amendment on the ground that one of their basic purposes is the enforcement of the law."[3] This statement suggests that the exclusionary rule should be applied to private investigators, if at all, only where they are in fact primarily engaged in law enforcement. If the goal of the private investigator is to obtain evidence for a criminal prosecution it could well be argued that he is primarily engaged in law enforce-

---

[3]The court observed, further, that "Searches by such well financed and highly trained organizations involve a particularly serious threat to privacy" and noted that California statutes "blur the line between public and private law enforcement." (70 Cal.2d at p. 100, fn. 3.)

ment since, as noted in *Stapleton*, searches and seizures to assert criminal prosecutions may achieve the status of an "inherently governmental task" so as to make the application of the exclusionary rule to such searches more of a deterrent than it would be in other cases of " 'private' searches." (70 Cal.2d at p. 103, fn. 4; see *Gambino* v. *United States,* 275 U.S. 310, 315-317 [72 L.Ed. 293, 295-297, 48 S.Ct. 137, 52 A.L.R. 1381].)

We are persuaded that it cannot be concluded that *all* private investigators are engaged in procuring evidence so as to facilitate the enforcement of the law. It is a matter of common knowledge that many investigators do not have as their primary mission the enforcement of the law or the procuring of evidence in aid of criminal prosecutions. (See *People* v. *Wright,* 249 Cal.App.2d 692, 694-695 [57 Cal.Rptr. 781].)

Turning our attention to Berdan's role, we observe, initially, that he testified that there is no suspicion of arson in 90 percent of the cases which he is called to investigate. Here he was called to inspect the subject fire by the insurance company. He was not called into the case by any law enforcement officials. Neither his employer nor the local enforcement official told him anything about the origin or the cause of the fire prior to his investigation. Under the state of the record it may be assumed that the insurance company's primary concern was protection against liability, rather than the attainment of a criminal conviction. Berdan testified that insurance companies are interested in determining the origin and cause of fire in cases other than arson because if there is negligence on the part of someone there may be a subrogation right and because the information gathered is often useful in fire prevention programs. There is no indication in the record that Safeco requested that arson charges be brought against defendant, nor did it request that fraud charges be brought against him. In sum, the evidence is reasonably susceptible of the inference that the basic purpose of Berdan's investigation was to determine, as a private investigator, the cause of the fire as information for the benefit and use of Safeco, his employer, rather than for the enforcement of the law or the gathering of evidence for use in a criminal prosecution.

We are not unmindful that upon arriving in Santa Rosa Berdan contacted the fire marshal and, later, the police chief to advise them of his presence, that in the course of Berdan's investigation he requested a reenactment by the fire department of what was done on the night of the fire, and that after completing his report he sent a copy of it to the fire marshal. These actions do not per se require the inference that Berdan was basically engaged in law enforcement or in gathering evidence to assist a criminal prosecution. These activities are clearly consistent with

the conduct of an independent investigation having for its objective the securing of information for the use and benefit of Safeco. The circumstance of the giving by Berdan of a copy of his report to the fire marshal, while it may have been of assistance to the local authorities, does not require the conclusion that Berdan was actively assisting a criminal investigation. Berdan was not requested to assist in the investigation, nor did he purport to do so. He had not agreed to furnish a copy of his report to the Santa Rosa officials nor was he under any compulsion to do so. Under the state of the record it appears that *upon the completion* of his independent investigation he gratuitously furnished a copy of his report to the fire marshal.

We perceive, moreover, that the record discloses that the criminal investigation was conducted by the fire marshal who, by his independent examination, had concluded prior to Berdan's arrival in Santa Rosa that the fire had been caused by an act of arson. Turnick, when advised by Safeco that Berdan was coming to investigate the fire, preserved the scene of the fire for Berdan. Turnick did not discuss his findings respecting the origin and cause of the fire with Berdan until the latter had completed his own investigation. No opinion as to the origin and cause of the fire was exchanged between Turnick and Berdan prior to the filing of the complaint against defendant. Turnick testified that, prior to the filing of the complaint, he had compared Berdan's report and concluded that the findings of his and Berdan's investigations were the same. Accordingly, although Berdan's report may have given Turnick comfort in that it coincided with his conclusions that circumstance does not require the conclusion that Berdan was assisting in gathering evidence for a criminal investigation.

In view of the foregoing we conclude that Berdan was acting in the capacity of a private investigator whose basic purpose was not the enforcement of the law and that, therefore, his actions and conduct were those of a private individual. ■ The Fourth Amendment does not apply to searches by a private individual unless such individual is acting as an agent of public officials or wilfully participating in a joint activity with a state agent who either requests the illegal search or has knowledge of it but fails to protect the third party's rights. (*Stapleton* v. *Superior Court, supra,* 70 Cal.2d 97, 100-101, 102; *People* v. *Garber,* 275 Cal.App.2d 119, 126-127 [80 Cal.Rptr. 214]; *People* v. *Fierro,* 236 Cal.App.2d 344, 347 [46 Cal. Rptr. 132]; *People* v. *Evans,* 240 Cal.App.2d 291, 302 [49 Cal.Rptr. 501]; see *Burdeau* v. *McDowell,* 256 U.S. 465, 475 [65 L.Ed. 1048, 1050, 41 S.Ct. 574]; *People* v. *Randazzo,* 220 Cal.App.2d 768, 770-775 [34 Cal. Rptr. 65]; *People* v. *Katzman,* 258 Cal.App.2d 777, 786 [66 Cal.Rptr. 319]; *People* v. *Wolder,* 4 Cal.App.3d 984, 994 [84 Cal.Rptr. 788]; *People* v. *Tarantino,* 45 Cal.2d 590, 595 [290 P.2d 505].)

 The record discloses that Berdan was not acting as the agent of local enforcement officials. He was employed not by the local authorities but by Safeco. Berdan was not engaged in a joint operation with local authorities, but was conducting an independent investigation. There is no indication in the record that local enforcement authorities made any requests of Berdan during the course of his investigation or that they directed him in any way as to the extent or conduct of his investigation. The record discloses, moreover, that it was Berdan who made requests of the public officials in aid of his own investigation. There is nothing in the record to indicate that the local law enforcement officials were aware or had knowledge that Berdan had taken the photographs which defendant asserts were improperly admitted in evidence. Insofar as Berdan's report is concerned, no request for such report was made by the law enforcement officials but it was voluntarily sent to them by Berdan.

As observed in *Fierro*, ". . . the question is one of the extent of government involvement in an invasion conducted by the private citizen. . . ." (236 Cal.App.2d at p. 348.) Here the degree of government involvement, if any, in Berdan's activities was minimal and was not such as to require the invocation of the exclusionary rule.

 " 'There are no state standards for "search and seizure" by a private citizen who is not acting as an agent of the state or other governmental unit. Therefore, acquisition of property by a private citizen from another person cannot be deemed reasonable or unreasonable. [Citations.]' " (*In re Donaldson*, 269 Cal.App.2d 509, 511 [75 Cal.Rptr. 220].)[4]
 It is significant, moreover, to note that the contracts of insurance between defendant and Safeco provide that Safeco could inspect the insured property and audit the books of the insured business. It is reasonable to assume that these provisions were inserted to protect Safeco's interests. The fire insurance policies specifically provided that Safeco was not liable for loss resulting from "Any fraudulent, dishonest or criminal act done by or at the instigation of any insured, . . ." In this context, it may also be noted that the record does not indicate that defendant was unaware of Berdan's presence or that he ever objected to the inspection of the building by Safeco's representatives. In any event, since Berdan was acting as a private citizen, we are not called upon to determine whether his investigation was reasonable within the context of the Fourth Amendment and the exclusionary rule.

---

[4]In this respect, it should be noted that defendant's reliance upon *Swan* v. *Superior Court* (8 Cal.App.3d 392 [87 Cal.Rptr. 280]) is misplaced. In *Swan* the arson investigator who entered the boarded residence was an employee of the sheriff's office. (At p. 394.)

 Defendant's second contention is that it was error to have admitted the tape recording of his interview with Berdan as Berdan did not administer the *Miranda* warnings prior to questioning defendant. This contention must be rejected for reasons similar to those set forth above with respect to defendant's first contention.

 A private citizen is not required to advise another individual of his rights before questioning him. (*People* v. *Cheatham,* 263 Cal.App.2d 458, 463 [69 Cal.Rptr. 679]; *People* v. *Wright, supra,* 249 Cal.App.2d 692, 694-695; *In re Donaldson, supra,* 269 Cal.App.2d 509, 511-512.) Absent evidence of complicity on the part of law enforcement officials, the admissions or statements of a defendant to a private citizen infringe no constitutional guarantees. (*People* v. *Price,* 63 Cal.2d 370, 379 [46 Cal.Rptr. 775, 406 P.2d 55]; *People* v. *Polk,* 63 Cal.2d 443, 449 [47 Cal.Rptr. 1, 406 P.2d 641]; see *People* v. *Montgomery,* 235 Cal.App.2d 582, 590 [45 Cal.Rptr. 475].) In the instant case, as already discussed, there is no evidence that Berdan was acting as an agent of local enforcement officials.

Defendant apparently contends that we should adopt a per se rule for private investigators, requiring them to advise parties of their rights regardless of the circumstances of the particular case. The protection of individual rights does not require so sweeping a solution. In determining whether a private investigator should be required to give the *Miranda* warning the inquiry is directed to whether the investigator is acting as an agent of law enforcement officials or is primarily engaged in enforcing the law. If he is, then *Miranda* comes into play. We have already concluded that Berdan was not an agent of the local law enforcement officers and that he was not primarily engaged in law enforcement.

We observe, moreover, that in the instant case the *Miranda* rule would not come into play because there is absent the element of custodial interrogation. The *Miranda* exclusionary rule is applicable only to statements made after a person is physically deprived of his freedom of action in any significant way or is led to believe, as a reasonable person, that he is so deprived. (*Miranda* v. *Arizona, supra,* 384 U.S. 436, 444 [16 L.Ed.2d 694, 706]; *People* v. *Arnold,* 66 Cal.2d 438, 448 [58 Cal.Rptr. 115, 426 P.2d 515].) In the instant case defendant had not been placed under arrest or in any way deprived of his freedom at the time he was questioned by Berdan. He came to the office of the insurance company voluntarily. During the interview his partner and Austin were present. There is nothing to indicate that defendant was led to believe that he was in any way deprived of his freedom or that he was not free to go at any time. To all intents and purposes de-

fendant was purporting to cooperate, as he was required to do under his insurance contract, with the representatives of his insurance carrier who were seeking to determine the origin and cause of the fire as well as the extent of the loss incurred by defendant and his partner.[5]

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 26, 1972.

---

[5] The record discloses that Austin, the local adjuster for Safeco, had obtained an inventory from defendant of the merchandise that was allegedly destroyed by the fire, that Austin had inspected the interior of the building in order to determine the origin of the fire and had photographed the interior in order to document the loss, that he took possession of the salvageable property, and that he and defendant were attempting to reconcile the differences in the inventory taken by defendant and that taken by Austin.